24CA1233 Peo in Interest of Baricelli 09-12-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1233
Arapahoe County District Court No. 24MH183
Honorable Michelle A. Amico, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Mario Baricelli,

Respondent-Appellant.

ORDER AFFIRMED

Division I
Opinion by JUDGE J. JONES
Lipinsky and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 12, 2024

Ron Carl, County Attorney, Meghan Rubincam, Senior Assistant County
Attorney, Aurora, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1　Respondent, Mario Baricelli, appeals the district court's order authorizing the staff at the Rocky Mountain Regional Veterans Affairs Medical Center (the VA) to administer his prescribed medications by injection if he refuses to take them orally. We affirm.

## I.　Background

¶ 2　Baricelli has a documented history of schizophrenia. In March 2024, he was admitted to the VA after being placed on a mental health hold following a welfare check because he was running into traffic and making delusional and paranoid statements.

¶ 3　In early April, the district court found that Baricelli was gravely disabled due to his schizophrenia, and it entered an order certifying him for short-term treatment at the VA through June 22, 2024. A division of this court affirmed that ruling. *See People in Interest of Baricelli*, (Colo. App. No. 24CA0615, June 6, 2024) (not published pursuant to C.A.R. 35(e)).

¶ 4　Baricelli was released from the VA in mid-April, but he was readmitted a week later after a home visit revealed that he wasn't taking his medications and that his apartment was in disarray

1

(including trash spread across the floor in all the rooms, broken cabinets and blinds, tape covering the windows, and nonsensical writing on the ceiling and a wall).

¶ 5     In early May, the People filed a petition for the involuntary administration of any necessary antipsychotic medications, mood stabilizing medications, anti-anxiety medications, and medications to treat any side effects of the other medications.  Baricelli, through his counsel, then entered into a stipulation agreeing to take the medications listed in the petition, while reserving the right to request a hearing on the issue.  The parties agreed in the stipulation that "the medications will be offered on a voluntary basis at each dosage, and only if [Baricelli] refuses that medication will the medication be administered involuntarily."

¶ 6     Baricelli later objected to the involuntary administration of medications and requested a hearing, while the People moved to extend the short-term treatment certification and filed another petition to involuntarily medicate him.  According to the People's filing, Baricelli had only intermittently engaged in psychiatric treatment since his readmission to the VA, and he told his

treatment providers that he wouldn't continue taking his medications after being discharged from the VA. His treatment providers opined that Baricelli "only tacitly engage[s] in short-term stabilization to facilitate discharge without continuing long-term care, which has contributed to continuing psychiatric decompensation over the past many years."

¶ 7      At a hearing on June 10, Baricelli clarified that he wasn't objecting to extending the certification for short-term treatment or to any of the medications listed in the petition. But he said that he would only take his medications orally and objected to having them administered by injection. He explained that the injections caused pain at the injection site, he was concerned about potential side effects, and he had experienced trauma from forceable injections in the past.

¶ 8      A VA psychiatrist, who was qualified as an expert in psychiatry, testified that Baricelli was currently prescribed the antipsychotic medication aripiprazole to be taken daily, and that it was appropriate to continue that medication. She also testified that he had a positive response, with minimal side effects, to that

3

medication in oral form, which was a good indicator that the same would be true if he were administered the medication by injection. (She further testified that taking the medication by injection would likely cause fewer appreciable side effects than taking the medication orally.)

¶ 9 Following the hearing, the district court issued an order extending the certification for short-term treatment to September 22, 2024. Finding the psychiatrist's testimony to be credible, it also authorized the involuntary administration of medication by injection. However, the court ruled that "[t]he medications shall be offered on a voluntary basis at each dosage and only if [Baricelli] refuses that medication shall the medication be administered involuntarily."

## II. Legal Principles and Standard of Review

¶ 10 A district court may authorize the involuntary administration of medication if the People demonstrate by clear and convincing evidence that (1) the person is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the person's

4

mental health condition or to prevent the likelihood of the person causing serious harm to himself or others; (3) a less intrusive treatment alternative isn't available; and (4) the person's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the person in refusing treatment. *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985).

¶ 11 Applying this test involves mixed questions of fact and law. *People v. Marquardt*, 2016 CO 4, ¶ 8. We defer to the district court's factual findings if they're supported by the record, but we review the court's legal conclusions de novo. *Id.* The resolution of conflicts in testimony and determinations of the credibility of the witnesses are solely within the fact finder's province. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23.

¶ 12 We must determine whether the evidence, viewed as a whole and in the light most favorable to the prevailing party, is sufficient to support the court's order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. The testimony of the physician seeking to administer treatment may be sufficient by itself to satisfy the *Medina* test. *Id.* at ¶ 30.

### III. Analysis

¶ 13    Baricelli doesn't contest the district court's ruling that the second element of the *Medina* test was met; he challenges the court's rulings that the first, third, and fourth elements of the *Medina* test were met.

#### A.    The First *Medina* Element

¶ 14    In terms of the first *Medina* element, we discern no error in the district court's determination that Baricelli is incompetent to effectively participate in the treatment decision that prescribed medications be administered by injection in the event he refuses to take the medications orally.

¶ 15    The district court found, with record support, that Baricelli lacks insight regarding the benefit of the long-acting injectable medications, which remain in the body longer than do oral medications, thereby eliminating the need to take a pill every day upon his release from the VA.  The court also found, with record support, that Baricelli has a history of noncompliance with taking his medications and that he engages in short-term stabilization to facilitate discharge without continuing long-term care.  And the

court found, with record support, that Baricelli's condition would deteriorate absent consistent medication.

¶ 16     We also note that, in this case, the first *Medina* factor is closely related to the fourth *Medina* factor. Below, we conclude that the district court didn't err by finding that Baricelli's need for treatment is sufficiently compelling to override any bona fide and legitimate interest he has in refusing treatment. The record indicates that Baricelli believes that his concerns about taking the medications by injection outweigh any possible need in administering the medications by injection. But the record indicates that although it is critical for Baricelli to consistently take aripiprazole, he hasn't been consistent in taking that medication. Thus, the record supports the district court's conclusion that Baricelli isn't competent in understanding that it is critical for him to take the medication by injection if he stops voluntarily taking the medication orally.

B.     The Third *Medina* Element

¶ 17     In terms of whether a less intrusive treatment alternative was available, it is significant that the district court's order requires the

VA to provide Baricelli with the medications in oral form at each dosage, and *only if* he refuses to take them orally can the VA involuntarily medicate him by injection. So the express terms of the order give Baricelli the less intrusive option of taking the medications orally. Only if Baricelli refuses that less intrusive option can the VA administer the medications by injection.

¶ 18    Further, although Baricelli asserts that he "has been compliant in taking these medications," the district court found, with record support, that he has only intermittently complied. And the court also found, with record support, that Baricelli's history of noncompliance includes completely stopping taking the medications when he was released from the VA in April 2024. *See People in Interest of Strodtman*, 293 P.3d 123, 133 (Colo. App. 2011) (rejecting the respondent's argument that taking her medication orally was an effective, less intrusive alternative to injection because she lacked the capacity to consistently take her medication orally).

## C.    The Fourth *Medina* Element

¶ 19    Finally, in terms of the fourth *Medina* element, the district court found that the need to administer Baricelli's medications by

injection — which it allowed only if he refuses to take his medications orally — is sufficiently compelling to override his concerns about pain at the injection site, possible side effects, and the trauma of forcible injection.

¶ 20    With regard to Baricelli's need for treatment, the court found that, without consistent medication, the deterioration in his condition would be immediate and dangerous.  That finding is supported by the psychiatrist's testimony that the prognosis for untreated schizophrenia is poor and that each time a patient with schizophrenia stops taking his antipsychotic medication, his schizophrenia will worsen because his brain will not return to its previous level of functioning.  *See Medina*, 705 P.2d at 974 (Under the fourth *Medina* element, a court must determine whether "the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge.").  The court also emphasized Baricelli's history of noncompliance in taking his medications orally, but, despite that, the court still required the VA to offer the medications to him in oral form at each dosage before resorting to an injection.

¶ 21    Regarding Baricelli's concern about pain at the injection site, although he testified that such pain lasts "all month," the court found that such physical discomfort "will subside quickly," which is supported by the psychiatrist's testimony that such local pain and swelling typically last between four and twenty-four hours. In terms of side effects, the court credited the psychiatrist's testimony that, because Baricelli has had minimal side effects with oral aripiprazole, it is likely that the same would be true of aripiprazole in injectable form. Although the record indicates that Baricelli had a negative experience with the injectable form of a different medication, nothing in the record reveals that he would have a negative reaction to the injectable form of aripiprazole. Further, Baricelli's prior history of experiencing trauma from forced injections can be avoided if he voluntarily takes his medications in oral form.

IV.    Disposition

¶ 22    The order is affirmed.

JUDGE LIPINSKY and JUDGE SULLIVAN concur.